# Seelye *v.* Smith.

*Statutory Action in nature of Ejectment.*

1. *Decree in chancery against non-resident defendant.*—Under statutory provisions (Code, 1876, §§ 3830-35; Code, 1886, §§ 3489-95), a decree in chancery against a non-resident defendant, who does not appear, and on whom service is perfected by publication only, is not final, and can not be executed until the expiration of eighteen months, or six months after service of a copy on him; and before its execution, the complainant is required to give bond, with condition as prescribed. But, if the decree has been executed by a sale made twelve months after its rendition, and the sale is confirmed, it can not be pronounced void on collateral attack by the defendant (as, where he sues at law to recover the land sold), because the record does not show the service of a copy of the decree on him, or the execution of the prescribed bond by the complainant.

2. *Misjoinder of plaintiffs.*—In a statutory action in the nature of ejectment, brought by two or more plaintiffs jointly, unless all of them are entitled to recover none can.

APPEAL from the Circuit Court of Montgomery.

Tried before the Hon. JOHN P. HUBBARD.

This action was brought by John H. Smith, T. C. Green, D. B. Lucas, and the children and heirs at law of John W. Dalgam, deceased, against Samuel D. Seelye, to recover the possession of a small tract of land near the city of Montgomery, with damages for its detention; and was commenced on the 20th May, 1886. "On the trial," as the bill of exceptions states, "the plaintiffs showed sufficient title in themselves to recover, unless their right and title was defeated by the defendant's evidence; and the defendant introduced a transcript of the record of a cause from the Chancery Court of Montgomery county," under which he deraigned title. The transcript is not set out, nor made an exhibit to the bill of exceptions, but the recitals in reference to it are these: "The suit was commenced by Mrs. E. J. Johnson, widow of a former owner of said land, through whom the plaintiffs claimed, against said John H. Smith, T. C. Green, D. B. Lucas, and John W. Dalgam, now deceased, claiming dower in said land on account of the alleged seizin thereof by her said husband during their marriage. The record showed that said suit was commenced by Mrs. Johnson as a citizen of Alabama, against said defendants as non-residents; that on affidavits of such non-residence, publication was made as prescribed by law to effect service on them; that decrees *pro confesso*, upon such publication, were duly taken, except as to said Dalgam (whose death was suggested, and an order entered abating the suit as to him); and that thereupon, the cause being submitted on the bill and said decrees *pro confesso*, a decree was rendered by the court for the sale of said property, for the payment of a sum of money found due to complainant on account of her alleged dower right in said land. It appeared, also, that said decree was rendered on the 8th January, 1878, in vacation, and was received by the register on March 1st, 1878; that the register's report of the sale was made to the court on the 25th April, 1879; and that on the next day, April 26th, there was a docket and minute entry in said cause as follows: '*Report of sale confirmed.*' It appeared from the register's report that the complainant in the cause was the purchaser, but had transferred her bid to another person, to whom the register made a deed, which was shown in evidence, and under whom the defendant deraigned title by regular conveyances, also in evidence. It did not appear by anything in said chancery

[Seelye v. Smith.]

proceedings, nor otherwise, that the defendants therein, or any of them, ever appeared in said cause, or were served with process formally [personally?]; nor did it appear that any bond was given by the complainant, as required by section 3834 of the Code, before the execution of said decree of sale; nor was there any evidence that a copy of said decree was ever served on the defendants, or any of them, before or after execution of said decree of sale."

On these facts, the court chaaged the jury, that the sale by the register was void, his deed conveyed no title, and they must find for the plaintiffs, if they believed the evidence. The defendant excepted to this charge, and he here assigns it as error.

BRICKELL, SEMPLE & GUNTER, for the appellant.—The sale by the register, having been confirmed by the court, can not be pronounced void in a collateral proceeding, such as this is; though it might be voidable, and subject to be set aside. It was not necessary that the record should affirmatively show the evidence on which the decree of confirmation was founded, and the decree itself involves a judicial ascertainment of the facts which authorized it.—*Vorhees v. U. S. Bank*, 10 Peters, 472; *Tolmie v. Thompson*, 2 Peters, 163; *United States v. Arredondo*, 6 Peters, 729; *Hunt's Heirs v. Ellison*, 32 Ala. 194; *Hanmer v. Mason*, 24 Ala. 484; *Wyman v. Campbell*, 6 Porter, 219; *Field's Heirs v. Goldsby*, 28 Ala. 218; *Gaines v. Harvin*, 19 Ala. 491; *Cox v. Davis*, 17 Ala. 714; *Lightsey v. Harris*, 20 Ala. 409; *Jenkins v. Jennings*, 9 Ala. 285; *Mather v. Hood*, 8 Johns. 36; *Martin v. Mott*, 12 Wheat. 19; 2 Va. Cas. 268.

WATTS & SON, and W. H. GRAVES, *contra*, cited *Sayre v. Elyton Land Company*, 73 Ala. 85, and authorities there cited on brief for appellant.

CLOPTON, J.—In defense of a statutory real action, brought by appellees to recover the land in controversy, the appellant set up a title derived from a purchaser at a sale by the register under a decree of the Chancery Court, rendered on a bill taken *pro confesso*, without personal service, to which three of the plaintiffs were defendants, and who did not appear. Sections 3830-3835 of the Code of 1876, which correspond with sections 3489-3495 of Code of 1886, provide, among other provisions not necessary to be mentioned,

that a decree made against a defendant without personal service, who does not appear, is not absolute for eighteen months from the rendition thereof, except as otherwise provided by the statutes; and that the court must direct a copy of the decree to be sent to such defendant. At any time within eighteen months from the rendition of such decree, the defendant may file a petition, showing a sufficient cause for setting aside the same, and permitting him to defend the suit on the merits, unless he has been served with a copy thereof, in which event the petition must be filed within six months from such service; and upon hearing, the chancellor has full power to open the decree, and proceed with the cause as if no decree had been rendered therein. Where personal service of the decree is made by serving the defendant with a copy, it is conclusive and binding on him, if the petition to set aside the decree is not filed within six months from such service. And it is also provided, that before the execution of such decree within eighteen months from the rendition thereof, the plaintiff, or party interested, must give bond with two sureties, payable to, and approved by the register, in a penalty prescribed by the chancellor or register, conditioned, in case the subject-matter of the suit is real estate, to account for its value, and to abide and perform such decree as the court may render, if the decree taken on the bill *pro confesso* is set aside.

The decree in the chancery suit was enrolled March 1, 1878. At what particular time the sale was made under the decree, does not appear; but the sale was reported by the register April 25, 1879, and was confirmed on the succeeding day. The bill of exceptions states, that it did not appear from the record, or otherwise, that a bond was given as required by the statute, before the execution of the decree, or that a copy of the decree was personally served on the defendants, or either of them. The question is, whether the sale made under the decree of the Chancery Court shall be declared a nullity in a collateral action, when the record does not affirmatively show a compliance with the terms of the statutes in the execution of the decree. Appellees insist, that the provisions of the statute are conditions precedent, on performance of which the jurisdiction of the court to make and confirm the sale is dependent, and that such performance must appear from the record.

The contestation between the parties is, whether the sale and confirmation are void, or only voidable.

[Seelye v. Smith.]

In *Sayre v. Elyton Land Company*, 73 Ala. 85, an original bill was filed by the defendant in the suit in which the decree of sale was entered, and in the same court, to vacate and annul the sale under the decree, on the ground that he was a non-resident of the State at the time the proceedings were had; that service was made on him only by publication; that the bond required by the statute was not given before the execution of the decree; and that he had no knowledge or notice of the filing of the bill, the decrees, or the sale thereunder, until about year before the bill to vacate the sale was filed. The sale was made within six months after the rendition of the decree. It was held, that the decree, which the court is authorized to render against an absent defendant, is not final or conclusive in the first instance, but provisional, subject to be set aside on application within the time prescribed by the statute, showing sufficient cause; and that the bond is essential to the execution of the decree before it becomes absolute. The sale and confirmation were set aside, as being in violation of the provisions and prohibitions of the statute, and for want of jurisdiction and authority of the court to make the sale. The bill was sustained on the rule, that courts of equity will intervene, upon proper application, after confirmation, to set aside sales of lands made by their officers, or under their process, when such sales are unconscionable, inequitable, or conducted in violation of law. Though an original bill was considered the proper mode, the sale having been confirmed, the attack was regarded and treated as direct, and decided on principles which are applicable when judgments, or decrees, or sales are directly assailed. While there are some expressions in the opinion rendered, from which the voidness of the sale and confirmation might be inferred, such inference was not intended; a decision as to this matter being expressly pretermitted. It is said: "Whether the sale and confirmation ought to be pronounced void, as is earnestly insisted by the counsel for the appellant, is a question not free from difficulty, upon a consideration of which the case does not compel us to enter."

We do not question that a sale made under such decree, without compliance with the statutory provisions, or before it became absolute, should be set aside on timely and proper application to the same court which made and confirmed the sale. But the present case raises a very different question. The validity of the sale and confirmation is collaterally assailed; and the question is, what presumptions should be

indulged, on a collateral attack, in support of the proceedings in the Chancery Court, after the decree has become absolute in fact and in law, and after the plaintiffs, who were defendants in the chancery suit, have acquiesced for more than seven years, without ever making application to have the sale and confirmation vacated and annulled?

The controlling principle is, that all reasonable presumptions are indulged to uphold judicial proceedings in a court of general jurisdiction, which have been conducted to a final judgment or decree, when collaterally drawn in question; and that whatever of doubt or ambiguity may be.apparent from the record, will be resolved in favor of their validity. The principle applies to every judgment, decree or .order, from the institution to the completion of the proceedings. In such case, the presumption is, that every act is rightly done, and in accordance with the law. Our own decisions have repeatedly announced and applied these principles to the judgments or decrees of courts of general jurisdiction.—*Hamner v. Mason*, 24 Ala. 480; *Falkner v. Christian*, 51 Ala. 495; *Pettus v. McClanahan*, 52 Ala. 55.

In *Voorhees v. Bank of United States*, 10 Pet. 449, proceedings in a suit commenced by attachment were called in question in a collateral action, and their validity assailed on the ground, that the record did not show that the statutory requirements had been complied with, in issuing the attachment, in giving notice, and in rendering judgment by default; and that an order of sale was made before the expiration of twelve months from the return of the writ, when the statute prohibited a sale from being made within that time. The sale was made and confirmed. After referring to the provisions of the statute, and the contention of the plaintiff in error, BALDWIN, J. says: "This leaves the question open to application of those general principles of law, by which the validity of sales made under judicial process must be tested; in the ascertainment of which, we do not think it necessary to examine the record in attachment, for evidence that the acts alleged to have been omitted appear therein to have been done. Assuming the contrary to be the case, the merits of the present controversy are narrowed to the simple question, whether the omission invalidates the sale. The several courts of Common Pleas in Ohio, at the time of these proceedings, were courts of general civil jurisdiction; to which were added, by the act of 1805, power to issue writs of attachment, and order a sale of property attached under

certain conditions.; no objection can be made, therefore, to
their jurisdiction over the case, the cause of action, or the
property attached. The process, which they adopted, was
the same as prescribed by the law; they ordered a sale, which
was executed, and on the return thereof gave their confirma-
tion. This was the judgment of a court of competent juris-
diction on all acts preceding the sale, affirming their validity
in the same manner as their judgment had affirmed the
existence of the debt." It was held that the judgment of
confirmation raised a presumption, conclusive so long as it
was unreversed, that whatever was necessary to the legality
of the sale was proved and found by the court, and it can
not be impeached collaterally, though the record does not
show that the requirements of the statute had been com-
plied with. This case was subsequently cited and approved
in *Harvey v. Tyler*, 2 Wall. 328, and the principles declared
applied to a judgment of the County Court exonerating lands
from delinquent taxes.

*Dawson v. Litsey*, 10 Bush, 408, was an action to recover
land, which had been sold by the commissioner under a
judgment of the Circuit Court enforcing a lien for the
purchase-money. The title thus derived by the purchaser
was relied on in defense of the action. The commissioner,
in making the sale, did not follow the judgment; but the
sale was reported and confirmed, the purchase-money paid,
and a deed executed to the purchaser. Objection was made,
that the court, in the order of confirmation, had ratified a
void sale. It is said: "The order of confirmation is a
judicial recognition of the right of the commissioner to make
a sale as reported, and is such a final order as may be ap-
pealed from by the party aggrieved. The chancellor alone
is to judge of the validity of such sales, and the true test in
all cases is, did the court have jurisdiction of the parties and
the subject-matter of the action, when rendering the judg-
ment? if so, it determines the rights of all the parties to that
judgment, so long as it remains unreversed." Other cases
could be cited, illustrative of the application of the general
principles of law above stated to sales made under a judg-
ment or decree of a court of competent jurisdiction, which
had been confirmed, but we deem it unnecessary.

No objection is made to the regularity of the service by
publication in the chancery suit. Being in strict conformity
with the statute, it was sufficient to give the court jurisdic-
tion of the parties. The Chancery Court had jurisdiction of

the subject-matter, and is a court of general jurisdiction. The decree of sale was regular and valid.—*Holly v. Bass*, 63 Ala. 387. Though not final so as to put it beyond the power of the court to set it aside, at a term subsequent to its rendition, on proper application being made within the time prescribed by the statute, it was authority to the register to sell on the statutory conditions being complied with, without further order or decree of the court. The authority to render a decree of sale and make an order of confirmation is not derived from the statutes, but grows out of, and is inherent in the original jurisdiction of the subject-matter. The purpose and policy of the statutes is, to afford defendants, not served, ample opportunity to be heard on the merits. The statutes operate to restrain and prohibit the execution of the decree of sale, until the statutory bond is given, or the decree becomes absolute as provided. Without the bond, it becomes absolute after the expiration of eighteen months from its rendition, or after the expiration of six months from personal service on the defendants by serving them with a copy. It may, therefore, become absolute, long before the expiration of the eighteen months. More than twelve months had expired after the rendition of the decree, before the sale was reported and confirmed. In whatever other respects an order of confirmation may be regarded as wanting in dignity and importance, it is binding and conclusive on 'the parties until set aside in some proper mode. Until then, it is *res adjudicata* as to every fact and matter essential to the lawful execution of the decree of sale, and to the regularity and validity of the sale, and becomes a part of the record, which proves itself, without the aid of evidence, that is not required to be entered of record.

While the failure to give the bond required by the statute, or service of the decree, "would furnish good ground for refusing to confirm the sale, or for setting it aside, if moved for within a reasonable time," as was said in *Holly v. Bass*, *supra*, it may well be doubted, whether the regularity of the sale, and of the order of confirmation, can be assailed in any mode, other than by application to the Chancery Court, in the manner, and within the time prescribed by the statute, or by original bill in the same court, as was done in *Sayre v. Elyton Land Company*, *supra*. That the defendant may avail himself of the latter mode, he must move in a reasonable time, be diligent, and acquit himself of unexplained *laches*. There should be a time beyond which judicial pro-

[Stevenson v. Moody.]

ceedings can not be questioned; when purchasers at sales under the decrees of courts of competent jurisdiction will be protected, and the property thus purchased may be transmitted without risk. If the party is required to move in a reasonable time when making a direct attack, *a fortiori* all reasonable intendments should be made in support of the decrees or orders of the court when collaterally called in question after the lapse of more than seven years, during which time no complaint was made.

The acts of the register in taking and approving the bond, and in serving a copy of the decree, are not judicial; and the statute does not require that they should be entered of record. On a collateral attack, only the proceedings of the court entered on record can be looked to. Nothing need appear of record not required by law to be entered. By the order of confirmation, the court adjudged that the decree of sale was executed in conformity with the statutes. The order is not impeached by any thing apparent on the record, and being unreversed, the sale must be regarded as valid in fact and in law. The decree of sale, the sale, and order of confirmation operated to pass the title of the plaintiffs who were parties thereto. Of course, the title of the heirs of Dalgam, as to whom the chancery suit was abated, is not affected thereby; but, as all the plaintiffs are not entitled, none can recover.—*Whitlow v. Echols*, 78 Ala. 206.

Reversed and remanded.


*Statutory Action in nature of Ejectment.*

