## SPEED v. ST. LOUIS M. B. T. R. CO.

(Circuit Court of Appeals, Eighth Circuit. March 21, 1898.)

### No. 1,017.

**1. DEED—CONSTRUCTION—INTENTION OF GRANTOR.**

When the language and terms employed in a written instrument are explicit, or have a generally accepted meaning, or have acquired a technical application, the letter of the instrument must control; but when the language is ambiguous or vague, or the terms employed create uncertainties as to intent, the safe rule is to read and apply every part as a whole, and, thus discovering what the real mind of the party was, to follow that to its practical conclusion.

**2. SAME.**

A son conveyed property to trustees, to be held for the sole use and benefit of his father during his natural life, to be managed with advice and consent of the father, and at his death to the use and benefit of the mother of the grantor during her natural life, and to be managed with her advice and consent, and at her death to hold for the joint use and benefit of the children of the joint bodies of the father and mother during their natural lives, and to rent and manage it with the advice and consent of the grantor, and in case of the death of "said children" to hold for the sole use and benefit of the grantor, his heirs and assigns, forever. *Held*: (1) That the deed conveyed, first, a use for life to the father and mother, then a use for life to their children excepting the grantor, and thereafter the remainder to the grantor, his heirs and assigns, forever; (2) that on the death of "said children" the entire beneficial interest vested in the grantor, leaving only a naked use in the trustees, which by the statute of uses immediately became executed in the grantor, so that he could convey a perfect title.

In Error to the Circuit Court of the United States for the Eastern District of Missouri.

This is an action of ejectment, instituted by the plaintiff in error against the defendant in error to recover possession of a lot or parcel of ground in block 422 in the city of St. Louis, Mo., popularly known as the lot of ground on which was situated McDowell's Medical College.

Isaac Drake McDowell is the common source of title. It appears from the bill of exceptions that in 1843 Dr. Joseph N. McDowell made a contract of purchase for this property with the then owner, Thomas F. Smith. It would seem that, said Smith having died, one Frederick W. Beckwith was appointed administrator of his estate, and in June, 1852, under order of the probate court, the administrator made a deed to said lot to Isaac Drake McDowell. The deed recited that it was made in fulfillment of said contract of purchase, and in consideration of the payment of $1,200, made by said Joseph N. McDowell. Afterwards, on the 28th day of February, 1853, Isaac Drake McDowell conveyed this property to certain named trustees, in trust for the following purposes:

"The said parties of the second part [the trustees] and their successors in office to hold the said property for the sole use and benefit of Joseph N. McDowell during his natural life; the said property to be controlled, rented, and managed by the said parties of the second part, their successors in office, as they may deem fit, by and with the advice and consent of the said Joseph N. McDowell. And in case of the death of the said Joseph N. McDowell, the parties of the second part, their successors in office, trustees as aforesaid, shall hold the said property for the sole use and benefit of Amanda V. McDowell during her natural life; said trustees to manage, rent, and control said property as they may deem fit, by and with the advice and consent of the said Amanda V. McDowell. And in case of the death of the said Amanda V. McDowell, the trustees aforesaid shall hold said property for the joint use and benefit of the children of the joint bodies of the said Joseph N. McDowell and the said Amanda V. McDowell, his wife, during the natural lives of said children; the said trustees to manage and rent said property as they deem fit, by and with the advice and consent of the said Isaac Drake McDowell. And in case of the death of said children, the said trustees to hold said property for the sole use and benefit of the said Isaac Drake McDowell, the present grantor, unto him, his heirs and assigns, forever."

The said Joseph N. McDowell and Amanda V. McDowell were the father and mother of said Isaac Drake McDowell. The children born of the joint bodies of said Joseph N. McDowell and Amanda V. McDowell were John J., Charles N., and Annie W. McDowell, and said Isaac Drake McDowell. On the 28th day of May, 1866, said John J., Charles N., and Annie W. McDowell conveyed, by quitclaim deed, their interest in said lot to said Isaac Drake McDowell. Joseph N. McDowell and Amanda V. McDowell died prior to 1870, leaving the said children surviving. In February, 1871, Isaac Drake McDowell presented to the circuit court of St. Louis county a petition, reciting the facts aforesaid respecting the deed of February 28, 1853, alleging the disqualification or refusal to act of the trustees designated in said deed of trust, and praying for the appointment of William Patrick as trustee to carry out the provisions of the trust, which petition was granted, and the appointment of William Patrick was accordingly made, who accepted the trust. Thereafter, on the 18th day of April, 1871, the said trustee, William Patrick, joined Isaac Drake McDowell and wife in the execution of a deed of trust to David Rankin and Ephraim G. Obear, to secure to one Thomas R. Patton the payment of about $10,500, money borrowed by Isaac Drake McDowell from said Thomas R. Patton. On default of payment this mortgage was foreclosed and the property sold thereunder. It is admitted that the defendant's title is derived under this foreclosure sale, and that, prior to the institution of this suit, said John J., Charles N., and Annie W. McDowell, and said Isaac Drake McDowell, had departed this life; the said Isaac Drake McDowell dying last, on the 5th day of January, 1882. Annie W. McDowell intermarried with William K. Speed, of which marriage the plaintiff in this action was the only child. All the other said children died childless. On this evidence the circuit court directed the jury to return a verdict for the defendant, whereupon the plaintiff sued out this writ of error.

Henry T. Kent and James W. Williams, for plaintiff in error.
John H. Overall, for defendant in error.

Before SANBORN and THAYER, Circuit Judges, and PHILIPS, District Judge.

PHILIPS, District Judge, after stating the case as above, delivered the opinion of the court.

Plaintiff's counsel have displayed marked research into the nice distinctions respecting the creation of qualified estates, and rest the case largely upon the rigidity of some technical rules of construction touching such deeds to real property. We will not undertake to review all the authorities cited, as the discussion would be more academic than useful. There is in the interpretation and construction of written instruments no more marked tendency of the judicial mind than to get at directly what was the real thought and purpose of the maker of the instrument. When the language and terms employed are explicit, or have a generally accepted meaning, or, as applied to the subject-matter, have acquired a technical application, the letter of the written instrument must control. But when the language is ambiguous or vague, or the terms employed create reasonable uncertainties as to what was the actual intent of the grantor, no safer rule can obtain than to place ourselves, as near as may be, in the precise situation of the person at the time of the execution of the instrument, and read and apply every part of it as a whole, and, thus discovering what the real mind of the party was, to follow that to its practical conclusion. The court that does this will seldom go wrong, and will measurably avoid the offense of making and enforcing contracts never assented to by the parties signing them. This thought is aptly expressed in Walsh v. Hill, 38 Cal. 481:

"In the construction of written instruments we have never derived much aid from the technical rules of the books. The only rule of much value—one which is frequently shadowed forth, but seldom, if ever, expressly stated in the books—is to place ourselves as nearly as possible in the seats which were occupied by the parties at the time the instrument was executed; then, taking it by its four corners, read it."

It may be regarded as the recognized rule that in the exposition of grants and contracts the construction should be upon the view of the attitude of the person making them, and upon a comparison of every part of the entire instrument, so that, while endeavoring to give every substantive part operative effect, also to give it a practical rather than a theoretical application. 2 Devl. Deeds, 837, 855; Wolfe v. Dyer, 95 Mo. 545, 8 S. W. 551; Jackson v. Myers, 3 Johns. 387. And when the intention is apparent, without repugnance to the settled rules of law, it will control the technical terms; "for the intention, and not the words, is the sense of any agreement." And this will prevail "regardless of inapt expressions or careless recitation." Collins v. Lavelle, 44 Vt. 233; Carson v. McCaslin, 60 Ind. 337; Rockefeller v. Merritt, 40 U. S. App. 666, 22 C. C. A. 608, 76 Fed. 909, 913; In re Bomino's Estate, 83 Mo. 433, 441.

The construction to be placed upon the deed of February 28, 1853,

executed by Isaac Drake McDowell, creating certain express trusts, will decide this case. It involves the single question: Did the grantor intend to convey the real estate in trust—First, for the use of his father during his natural life; second, to the use of his mother during her natural life; and, third, to the use of their children during their natural lives, with remainder over to Isaac Drake McDowell's heirs? Or, did the grantor intend by the deed to create a use in his father and mother during their natural lives, and then a use in his brothers and sisters during their natural lives, and thereafter for the sole use of himself, his heirs and assigns, forever? If the former construction is to be given, it is conceded that the verdict should have been for the plaintiff; but, if the latter construction shall obtain, the verdict was for the right party.

The plaintiff's contention is suspended entirely upon the third trust specified in the deed, which declares that, after the death of the father and mother, "the trustees shall hold said property for the joint use and benefit of the children of the joint bodies of said Joseph N. McDowell and Amanda V. McDowell, his wife, during the natural lives of said children." The argument is that the term "children of the joint bodies of said Joseph N. and Amanda V. McDowell," included the grantor as clearly as if his name had been specifically written in the deed in connection with the other named children; that a conveyance to a designated class by apt words is as effective as if the instrument described, by name, each member of that class. Arthur v. Weston, 22 Mo. 381; Hamilton v. Pileher, 53 Mo. 334; Pratt v. Mining Co., 24 Fed. 869; 1 Beach, Trusts, § 267; Devl. Deeds, § 184; Freem. Co-Ten. § 110.

Had the trusts created stopped with the third clause of the deed, it could be safely said that the grantor reserved to himself only a contingent life estate or use, as he was described to a reasonable certainty by the designation of the "children of the joint bodies," etc. This would be so because the statute (Rev. St. Mo. 1889, § 8834) declares that:

"Every conveyance of real estate shall pass all the estate of the grantor therein, unless the intent to pass a less estate shall expressly appear, or be necessarily implied in the terms of the grant."

But the deed proceeds further to provide, in this connection, that, when the life estate shall devolve upon the children, the said trustees shall "manage and rent said property as they deem fit, by and with the advice and consent of said Isaac Drake McDowell." During the life of the father the said trustees were to manage the estate with his advice and consent; and likewise, in the case of the mother, the trustees were to manage the estate with her advice and consent. When it came to the management of the estate for the benefit of the children, the grantor provided for a protectorate in himself to guard the administration of the trust in their behalf, as if then regarding himself as the best friend of the beneficiaries to secure to them the best results. Then the deed proceeds:

"And in case of the death of the said children, the said trustees to hold said property for the sole use and benefit of the said Isaac Drake McDowell, the present grantor, unto him, his heirs and assigns, forever."

The term "said children" is most significant. It refers back, of course, to the children named in the third clause of the deed. By this expression the grantor quite clearly indicated that it was not in his mind to include himself in the clause of "children born of the joint bodies of said Joseph N. McDowell and Amanda V. McDowell." If so, why should he have provided specifically for himself by name in the fourth and last trust? He was still dealing with the class designated in the third trust as "the children," and it would be as palpably absurd as contradictory to say that he was providing for an estate in himself after he was dead. Had it been the purpose of Isaac Drake McDowell to reserve to himself a life estate only, he would have indicated it by some such words as the following: And in case of the death of said children, the said trustees to hold said property for the sole use and benefit of the heirs of said children. Or, if he had desired to limit the use to his own heirs he would have said: To the sole use and benefit of the heirs of said Isaac Drake McDowell. This, under the statute, on the termination of the life estate, would have entitled the heirs "to take as purchasers by virtue of the remainder so limited in them." Rev. St. Mo. 1845, c. 32, § 7; Rev. St. Mo. 1889, § 8838. Instead of this, however, "after the death of said children," he expressly reserved the sole use and benefit "to Isaac Drake McDowell, the grantor, his heirs and assigns, forever." These are apt words to create an estate in fee simple absolute.

The contention of plaintiff renders useless the entire provision of the fourth clause of the trust, inasmuch as it was not at all necessary (as we have already shown) to reserve thereby to the grantor a mere life estate; whereas, under the other construction, vitality and, operation are given to every part of the instrument—First, a use for life to the father and mother; then, a use for life to their children; and thereafter the remainder to the grantor, his heirs and assigns, forever. While the plaintiff, as the child of the sister, in the event of Isaac Drake McDowell dying intestate, seised of the land, would have been his heir, yet, inasmuch as in his lifetime Isaac Drake McDowell conveyed his title, it vested in the assignee. On the death of "said children" the entire beneficial interest vested in Isaac Drake McDowell. Therefore, the trust became a dry trust, and on the recognized doctrine that, as the extent of the trustee's title is to be measured rather by its object than the words of the trust, and it "cannot be carried further than the complete execution of the trust necessarily requires," the trustee had no active duty to perform, and, therefore, it was not essential that the trustee, Patrick, should have joined Isaac Drake McDowell in the execution of the deed of trust under which defendant claims. In such event there was nothing left in the trustee but a naked use, which the statute of uses at once executed in the plaintiff. Roberts v. Mosley, 51 Mo. 282; Pugh v. Hayes, 113 Mo. 424, 21 S. W. 23.

It may, therefore, be conceded to plaintiff's contention that the trustee had no power to place a mortgage upon this land. And it is quite evident that the whole proceeding in the circuit court of St. Louis county for the appointment of Patrick as trustee, and his

joining in the execution of the deed of trust, were inspired by the attaché of some real-estate office, who in such matters generally has more caution than knowledge of the law. The contention of plaintiff's counsel that the recitations in the petition of Isaac Drake McDowell to the circuit court of St. Louis county for the appointment of Patrick as trustee amount to a construction placed by him upon his·title inconsistent with the present contention of defendant is of little consequence. This contention is based upon the recitation in said petition that:

"The only children of the joint bodies of said Joseph N. and Amanda V. McDowell were John J. McDowell, Charles N. McDowell, Annie W. McDowell, and Isaac Drake McDowell, your petitioner."

Any inference from this recitation favorable to the plaintiff is reversed by the language and provisions of the deed of trust soon thereafter made by Isaac Drake McDowell to Rankin and Obear, trustees. The habendum clause is:

"To have and to hold the same, with the appurtenances, to the said parties of the second part, and to the survivor of them, and to their successor, and to the assigns of the said parties of the second part, or of said successor, or survivors, forever."

And then it expressly declared that, in case of sale, the trustee or officer making the same "shall execute and deliver a deed or deeds in fee simple of the property sold to ·the purchaser or purchasers thereof." He thereby solemnly asserted that he had in himself the fee to this property at the time of the execution of the last-named deed of trust, and was dealing with the property upon that assumption.

The judgment of the circuit court is affirmed.